## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FT. MYERS DIVISION

MICHAEL BALLESTEROS,

     Plaintiff,

v.                                  Case No: 2:19-cv-00881-SPC-NPM

WALMART STORES EAST, LP,

     Defendant.

_____/

## **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT**

Plaintiff, pursuant to the Fed. R. Civ. P. 56 and S.D. Fla. L. R. 56.1, submits this Memorandum of Law in Opposition to Defendant's Motion for Final Summary Judgment, and states as follows:

## **INTRODUCTION**

This is a negligence and premises liability action resulting from a slip and fall incident in a Walmart store on May 24, 2018.

1. Admit.

2. Admit.

3. Admit.

4. Admit.

5. Admit.

6. Admit.

7. Deny. As Plaintiff walked through the store, Plaintiff's left foot slid on a liquid causing

Plaintiff to fall and sustain injuries. [DE 34:2 at 4:03:22].

8.  Admit.

9.  Deny. Plaintiff remembered falling backwards, the video does not show him falling backwards. [DE 34-1 at 59:5-12];[DE34-2 at 4:03:22].

10. Admit.

11. Deny. After the fall Plaintiff looked behind him and saw water on the floor that he testified were footprints, spots of water, and droplets of water spread over large area [DE 34-1 at 56:7-18, 94:12-18, 99:6-11].

12. Deny. Plaintiff was not certain how long the water was there, however plaintiff testified it looked like it could have come "from people coming in and out trailing a lot of water" [DE 34-1 at 97:7-24].

13. Admit.

14. Admit.

15. Deny. A Defendant employee that was not disclosed during discovery walks directly to the area Plaintiff's fall occurs, comes to a complete stop, fails to inspect the ground, and walks towards the entrance of the store two minutes and thirty-eight seconds prior to Plaintiff's fall. [DE 34-2 at 4:00:44]. One minute prior to Plaintiff's fall another Defendant employee that was not disclosed during discovery walks through the same area and fails to inspect the ground. [DE 34-2 at 4:02:27].

16. Admit.

17. Admit.

18. Admit.

19. Deny. (Exhibit A, and B) [DE:34-8].

20. Admit.

21. Deny. Slip and fall incidents occur frequently, especially when it is raining outside. [DE:34-5 at 30:15-19]. Mr. Gonzalez has seen it happen over twenty times. [DE 34-5 at 32:21-33:4]. Mr. Salavics stated that. he personally cleans up spills two to three times a week. [DE 34-4 at 36:23-34:5].

22. Deny. David Gill's should be allowed to testify regarding his opinions. [DE 40].

23. Admit.

24. Admit.

25. Admit.

26. Deny. Dr. Norton's treatment and recommendations were based on Plaintiff's physical examination, clinical symptoms, review of MRI's, and the fact that Plaintiff fell. [DE 32-3 at 25:18-24:5].

27. Deny. Dr. Norton's treatment and recommendations were based on Plaintiff's physical examination, clinical symptoms, review of MRI's, and the fact that Plaintiff fell. [DE 32-3 at 25:18-24:5].

28. Deny. Dr. Norton's treatment and recommendations were based on Plaintiff's physical examination, clinical symptoms, review of MRI's, and the fact that Plaintiff fell. [DE 32-3 at 25:18-24:5].

29. Admit.

30. Deny. Dr. Norton should be allowed to testify regarding his opinions. [DE 41].

31. Deny. There is admissible evidence to establish Plaintiff's injuries were caused by the fall.

32. Admit.

## <u>LEGAL STANDARD</u>

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.,* 357 F.3d 1256, 1259 (11th Cir.2004). An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp.* at 1259 (11th Cir.2004). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* at 1260. A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.; Anderson,* 477 U.S. at 251-52.

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson,* 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 919 (11th Cir.1993). "It is not the court's role to weigh conflicting evidence or to make credibility determinations; the

non- movant's evidence is to be accepted for purposes of summary judgment." *Mize v. Jefferson City Bd. of Education*, 93 F.3d 739, 742 (11th Cir. 1996). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322.

"In deciding whether an inference is reasonable, the Court must cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, solong as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one." *Jeffrey*, 64 F.3d at 594 (quoting *WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir. 1988)); *see also Moore v. Morris*, 475 So.2d 666, 668 (Fla. 1985) (holding if the evidence is conflicting or will permit different reasonable inferences, it should be submitted to the jury as a question of fact to be determined by it).

## **MEMORANDUM OF LAW**

A federal court sitting in diversity applies the substantive law of the state in which the case arose. *See Pendergast v. Sprint Nextel Corp.*, 592 F. 3d 1119, 1132-33 (11th Cir. 2010).The above-captioned claim was removed to this Court based on diversity of citizenship of the parties and the claimed amount of controversy exceeding $75,000.00. Accordingly, Florida substantive law applies.

Florida law provides that a business owner "owes two separate and independent duties to an invitee: (1) to use reasonable care in maintaining the property in a reasonably safe condition; and (2) to warn of dangers of which the owner knew, or should have known, existed and which are unknown to the invitee and cannot be discovered through the invitees use of reasonable care." *See Aaron v. Palatka Mall, L.L.C.*, 908 So. 2d 574, 577 (Fla. Dist. Ct. App. 2005); *Delgado v. Laundromax, Inc.*, 65 So.3d 1087, 1089 (Fla. 3d DCA 2013).  When a business owner creates a dangerous condition or allows a dangerous condition to knowingly remain on its property, that business owner breaches its duty. "The law is clear that if a dangerous condition on the floor of a business establishment is created by (1) a servant or agent of the owner or (2) an outsider and the condition is one which has existed for sufficient length of time that the owner should have known of it, the owner is liable for any ensuing injuries proximately caused by the dangerous condition when sustained by a business invitee."  *Sabugo v. GDS Drugs, Inc.,* 350 So. 2d 22, 22–23 (Fla. Dist. Ct. App. 1977) (*citing Food Fair Stores, Inc. v. Trusell*, 131 So.2d 730, 732(Fla.1961)). "When an injured party alleges that an owner or possessor breached the duty to keep the premises in a reasonably safe condition, an issue of fact is generally raised as to whether the condition was dangerous and whether the owner or possessor should have anticipated that the dangerous condition would cause injury ...." *Cherubino v. Home Depot U.S.A., Inc.*, 2007 WL 2875746, at *2 (M.D. Fla. Oct. 2, 2007) (citing *Aaron v. Palatka Mall, L.L.C.*, 908 So.2d 574, 577 (Fla. 5th DCA 2005). "A landowner owes a business invitee a duty not only to react to hazards of which it has notice but also to inspect to ensure conditions are safe or, at the least, that hazards (unless open and obvious) are discovered and warned against." *Food Lion, LLC v. Monument/Julington Assoc. Ltd. P'ship*, 939 So. 2d 1106, 1107–08 (Fla. 1st DCA 2006).

"Florida courts have a strong policy preference for submitting negligence actions to the jury. When reviewing the propriety of a district court's summary judgment in a diversity case, the Eleventh Circuit Court of Appeals has taken into consideration a strong state law policy for sending a particular matter to the jury. *Cherubino,* 2007 WL 2875746, at *3 (citing *Cook ex rel. Estate of Tessier v. Sherif of Monroe County,* 402 F.3d 1092, 1120-21 (11th Cir.2005). Florida courts have consistently held that "[w]hether a landlord's duty to maintain the premises has been breached is ordinarily a question for the jury to decide." *Food Lion, LLC* at 939 So. 2d at 1108.

Florida Statute 768.0755 applies to cases involving foreign transitory substances. The Statute states:

> (1) If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:
> > (a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or
> > (b) The condition occurred with regularity and was therefore foreseeable.
> (2) This section does not affect any common-law duty of care owed by a person or entity in possession or control of a business premises.

*Fla Stat. 768.0755 (2010).*

As Walmart notes, in order to prevail on its Motion for Summary Judgment, "Walmart has to show that there is no genuine dispute about its actual or constructive notice." For the reasons stated below a rationale trier of fact could find that Walmart had actual or constructive notice of the dangerous condition.

**A.**    **Genuine Issues of Material Fact Exist Regarding Whether Walmart had Constructive Notice**

As stated above, under Florida law, constructive knowledge may be proven by circumstantial evidence showing that either: (a) the dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the

condition; or, (b) the condition occurred with regularity and was therefore foreseeable. *Fla. Stat. § 768.0755(1)(a)-(b)*.

In *Garcia v. Wal-Mart Stores, East, L.P*, the Court identified "four primary factors that drive a court's analysis of whether there was sufficient circumstantial evidence of the length of time a transient substance persisted on a business owner's floor." These factors are: (1) lack of evidence indicating that a transitory substance existed, (2) evidence of how a substance ended up on the floor, (3) the condition of a substance upon discovery, and (4) evidence of the business owner's neglect in inspecting its premises. *Id.* at *2. 2015 WL 898582 at *2 (M.D. Fla. Mar. 3, 2015).

Here there is sufficient evidence demonstrating that there was water on the floor, that the water had emanated from other customers who had tracked the water in from the outside, that the water had footprints and appeared to have been tracked through the store, and that Walmart should have discovered this condition through the exercise of reasonable diligence.

### 1. *Evidence that a Transitory Foreign Substance Existed*

In its Motion, Walmart does not argue directly that there is no evidence of water on its floor. Walmart's arguments appear to be directed to a lack of knowledge of the water. Regardless of its position, the record contains ample evidence from which a reasonable jury could conclude that Mr. Ballesteros slipped in water on the floor of the Walmart.

Mr. Ballesteros testified throughout his deposition as to the existence of water on the floor [DE 34-1 at 47:21-22, 56:11-19, 57:3-6, 57:13-16, 92:20-23, 93:18-20]. CCTV video shows Plaintiff's left foot sliding out from under him in a manner consistent with water on the floor; followed by a Walmart employee immediately guard the area in a manner consistent with Walmart's policies and procedures for guarding spills [DE 34-2 at 04:03:22] [DE 34-4 at 25: 20-

26: 20; 55:24:56-3] [DE 40-1]. The Walmart employee immediately called someone over to mop the exact area where Mr. Ballesteros fell who proceeds to mop the area for approximately 50 seconds after Plaintiff fell in an attempt to dry the floor indicating a large amount of water spread over a large area. [DE 34-2 at 04:03:55-04:04:46].

Walmart employees can be seen mopping the entrance to the store (adjacent to the area where Plaintiff fell) for more than 30 minutes prior to the fall and - this indicates the presence of water within the store. (See Exhibit A) [DE 34-2]. In fact, the influx of water was so large that Walmart needed multiple employees to mop the floor in a failed attempt to keep water from coming into the Walmart. [DE 34-2 at 03:50:50]. Mr. Ballesteros testified it was raining outside when he entered the store [DE 34-1 at 47:3-9, 55:4-8]. Further, after reviewing the CCTV video, Jose Gonzalez testified that it appeared that Walmart employees were mopping with dry mops, which are utilized to dry the floor when it is raining outside. [DE 34-5 21:1-22] George Salavics a manager at Walmart testified that the purpose of having employees mopping the entrance is to make it less likely that customers track water into the store thereby creating a dangerous condition. [ DE 34-4 30:12-22]. Walmart employee Jose Gonzalez testified that the reason employees use dry mops at the entrance is to "dry the floor so people don't slip on it." [DE 34-5 at 22:6-16] Jose Gonzalez testified that during rainy days customers fell "quite often" because of water tracked into the store. [DE 34-5 at 30: 15-25]. Plaintiff filled out an incident report indicating he fell on water and George Salavics (who created the incident report) testified that what he observed on the video was consistent with what Plaintiff told him that day- i.e. that he fell on water. [DE 34-4 at 59:14-18].

Plaintiff's expert David Gill has stated that, given the properties of the VCT flooring utilized by Walmart, the manner in which Mr. Ballesteros slipped is consistent with a wet floor

but inconsistent with a dry floor. [DE 40-1 at par. 11]. Accordingly, should Walmart dispute the fact that Mr. Ballesteros slipped in water, there is sufficient evidence from which a jury could conclude that there was water on the floor that led to the slip.

2. ***Evidence as to How the Transitory Foreign Substance Ended up on the Floor***

In determining the source of a transitory foreign substance, the court may look to circumstantial evidence in order to establish constructive knowledge on the part of the business owner. *Garcia v. Wal-Mart Stores, East, L.P.*, 2015 WL 898582 (M.D. Fla. Mar. 3, 2015). This inquiry is necessarily done on a case-by-case basis. In his deposition Mr. Ballesteros indicated that while he was not certain of the exact source of the water, it appeared as if it had been tracked in from the front by other customers. A review of the CCTV video supports this theory and provides evidence supporting the contention that the source of the water is rainwater emanating from outside the store.

First, Mr. Ballesteros indicates that it was raining that day, and Walmart concedes this fact. [DE 34-1 at 55:4-6] [DE 34 at par. 2 "…because it was raining outside"]. Second, the CCTV video shows that there was a considerable amount of water that existed for a long time both before and after Plaintiff's fall. Walmart employees are seen mopping the entranceway for more than 30 minutes before the fall and nearly an hour after the fall in an effort to keep the floor dry- this demonstrates the presence of a large amount of water that day. (See Ex. A) [DE 34-8 at 3:32:51-4:41:58]. Third, Walmart placed a wet floor sign in the area adjacent to the entranceway. [DE 34 at par. 20]. Importantly, the sign is placed on the tile floor adjacent to the entranceway to warn customers that water may be present outside of the entranceway and in the store itself. [See e.g. 34-8 at 3:50:43]. The placement of this sign shows that (1) Walmart was aware of the presence of water beyond the entranceway and onto the tile floor of the store itself, (2) Walmart knew that

water would likely be tracked into the store onto the tile floor of the store, and (3) Walmart knew that the flooring posed a risk of customer injury when wet.

On the day of Mr. Ballesteros fall, Walmart did not keep water from intruding into the store and the water was not contained to the entranceway. Rather, the water frequently found its way into the store and onto the vinyl composite tile of the store itself. [1] This is demonstrated by the many times Walmart employees are seen on the CCTV videos mopping the tile floor inside the store before Plaintiff fell. (See Ex. A) [DE 34-8 03:36:41, 03:50:43, 3:50:57, 4:02:32, 04:04:51, 04:41:58, 04:42:41] [DE34-2 04:03:55, 04:42:42.]

Moreover, it is clear that on that day rainwater was being tracked by customers to the exact area where Plaintiff fell. At 04:41:58 on the CCTV video, a Walmart employee is seen mopping the entranceway with a dry mop in an effort to dry the floors due to rainwater being tracked into the store. (See Ex. B) The employee does not stop at the entranceway, but rather, he continues to the area in front of the McDonalds. (See Ex. B) Once he completes this area he stops, pauses, and then proceeds to mop further into the store- the area where Mr. Ballesteros fell. (See Ex. B) This is a clear indication that on that day the rainwater tracked from the exterior of the store did, in fact, intrude into the area where Mr. Ballesteros fell. Moreover, despite the fact that Walmart employees were mopping for more than 30 minutes before Plaintiff's fall, the CCTV video indicates that Walmart never mopped in the area where he fell. [See generally 32-2 and 32-8].

Additionally, there is evidence that rainwater would frequently be tracked into the store in the exact manner that Plaintiff alleges. Walmart employee, Jose Gonzalez testified that on

---

[1] Plaintiff makes a distinction between the entranceway and the store itself. The entranceway utilizes different flooring, while the store utilizes vinyl composite tile.

rainy days customers would frequently track water into the store, and that they would frequently fall from water tracked into the store. [DE 34-5 at 32:9-33:4]

As will be more fully addressed below, Mr. Ballesteros described the water as looking like it had been tracked or displaced by customers walking over it. Additionally, the CCTV Video does not indicate any other potential source of water- i.e. no customer is seen dropping liquid, no leaking merchandise is seen on the video.  Accordingly, given these facts, a reasonable trier of fact could infer that the water was tracked through the store from the front entrance by customers as they entered the store.

### 3. *Evidence of the Condition of the Transitory Foreign Substance Upon Discovery*

Florida Court have held that evidence of footprints or track marks in water is evidence that tends to show water was on the floor for an amount of time sufficient to impute constructive knowledge to a business owner. *Palavicini v. Wal-Mart Stores E., LP*, 787 F. App'x 1007, 1012 (11th Cir. 2019) ("footprints…tend to show that the liquid was on the floor an amount of time sufficient to impute constructive notice to Wal-Mart"); *Borroto v. Wal Mart Stores East, LP*, 2020 WL 6591193 (M.D. Fla . 2020) ("Evidence of sign of age like dirt, scuffing, or tracks in a substance "create permissible inference regarding amount of time the water has been on the floor.").

In this matter, Plaintiff testified at his deposition that he saw footprints and water tracked across the floor over a large area. Walmart attempts to attack this evidence by asserting that "Plaintiff looked behind him and saw water on the floor that he initially described as "footprints but later clarified were spots of water or droplets."  [DE 34 at par. 11].  Walmart implies that Mr. Ballesteros testimony was inconsistent and should be interpreted to mean that did not see footprints in the water.  A review of Mr. Ballesteros entire deposition transcript indicates that this is not the case. Mr. Ballesteros testimony indicates that he *did see* what he footprints in the water.  At least

12 times in his deposition he discussed the footprints he saw and consistently said the water appeared as if it had been tracked throughout the store by people coming in and out of the store. [DE 34-1 at 47:21-22, 55:11-12, 56:13-19, 56:24-57:6, 57:6-16, 59:18-60:2, 92:20-23, 93:18-20, 96:21-97:3, 96:21-25, 97:7-24, 98:18-99:5]; [Exhibit C at par. 2-18].  Mr. Ballesteros described that these footprints consisted of drops of water in a large area. [See Exhibit C].

Despite his clear testimony that he saw footprints and water that appeared as if it had been waked through, counsel for Walmart continued to ask him whether he had "actually seen footprints" or a "shoeprint." [DE 34-1 at 98:18-99:15] Having answered the question multiple times in multiple ways, Mr. Ballesteros interpreted Walmart's final questions to be asking whether he saw an "actual footprint" or a "shoeprint"- i.e. a tread pattern in the water itself.  [Exhibit C at par. 19].  At this point, Mr. Ballesteros indicated that he had not seen a footprint or shoeprint but rather, he had seen droplets of water everywhere.  [Id.] As his deposition transcript indicates and his declaration clarifies, Mr. Ballesteros saw droplets of water covering a large area that appeared to be water that had been walked through and spread around by foot traffic- he described this as appearing to be footprints throughout the water.

Mr. Ballesteros' description is consistent with water that had been tracked through by shoes over time and a reasonable trier of fact could find the same.  What water looks like after it has been spread around by foot traffic certainly creates an issue of material fact that can be decided by a jury.  Footprints give rise to an inference of constructive knowledge not because they are footprints, but because they indicate that a substance was on the ground long enough for other individuals to walk through it.  Whether or not Mr. Ballesteros could identify the tread of the shoe or the number of footprints is irrelevant.  Mr. Ballesteros description of the water on the ground

sufficiently indicates that the water had been on the ground long enough for customers to walk through it and for it to be discoverable by Walmart employees.

### 4. *Evidence of Proximity to the Foreign Transitory Substance*

Under Florida law, an employee's proximity to a substance gives rise to an inference of constructive knowledge. It is well established that, while there may be a dispute as to how long a dangerous condition has existed, "the fact that an employee may be able to see the location of a puddle from his or her workplace has been held to be some circumstantial evidence of constructive knowledge of the conditions existence." *Greenleaf v. Amerada Hess Corp.*, 626 So.2d 263 (Fla. 4th DCA 1993); *see Winn Dixie Stores vs. Guenther*, 395 So.2d 244, 246 (Fla. 3d DCA 1981). In *Markowitz v. Helen Homes of Kendall Corp.*, 826 So.2d 256 (Fla. 2002), the court addressed this issue of constructive notice as well, finding that there was sufficient evidence of constructive notice where there were three employees in the immediate vicinity of where the fall occurred.

In this case, by viewing the CCTV footage, it can be shown that, in the five minutes prior to the incident, there were at least 12 Walmart employees shown walking in the area immediately adjacent to the water. See (Exhibit D) [DE34-2 3:58:09] [DE 34-8 3:58:09-4:03:23] Moreover, the footage indicates that seconds before Plaintiff falls Joseph Parker, a Walmart employee, walks in the ***exact spot*** where Plaintiff slips and falls. See (Exhibit D) [DE34-2 4:03:16] Joseph Parker is the last person to traverse this area before Mr. Ballesteros slipped and fell. While Mr. Parker testified that he did not see water on the floor in the area where Plaintiff fell this testimony is not dispositive of the issue. Testimony that a person does not see a substance is not equivalent to testimony that that substance was not there. If water was on the floor (and there is substantial evidence indicating it was) Mr. Parker either created the dangerous condition or the water was already there.

Further, the Defendant stated in its Motion for Summary Judgment that "another Walmart employee inspected and zoned the area approximately **one minute** before the incident and did not see any liquid on the floor." [DE 34]. This, however, is simply not the case. The employee who traversed the area in the minute prior to the fall had his head up and his eyes were looking ahead. His gaze was not toward the ground. [See DE 34-2, DE 34-8 at 4:02:26].   In *Dourdeau* v *Target Corp.,* an employee testified that he walked through the area of the fall four minutes prior and that he did not see anything on the floor, however, with a review of the CCTV footage, the court concluded that this employee did walk through the area but that his gaze was at patrons and not at the ground.  572 Fed. Appx 97, 972 (11th Cir. 2014)*.*  Similarly in this case, the employee who had "inspected and zoned" the area just before the fall was looking forward and was not actively looking for any potential hazards. [See DE 34-2, DE 34-8 at 4:02:26].

In contrast, in the case of *Borroto v. Walmart Stores East, LP*, 2020 WL 6591193 (Nov. 10, 2020), an individual slipped and fell in the deli section of Walmart. At the time of the fall, an employee was in the area stocking frozen pizzas. Approximately an hour before the fall, that employee had wheeled the frozen pizza rack across the aisle while he was slicing deli meat. It was disputed as to where the liquid came from and how long it was on the floor. The plaintiff contended that Walmart had constructive knowledge because there was an employee in the area, that employee created the dangerous condition and there was no inspection prior to the fall. This case is distinguishable from the present matter because in this case, we know that the water was tracked in from outside. Additionally, there were far more than just one employee in the vicinity of the fall. As previously stated, there were at least twelve employees in the area just before the fall and all Walmart employees are trained to always be on the lookout of potential hazards.

Based on the proximity of the numerous employees to the water on the floor in the five minutes prior, a reasonable inference can be drawn that Walmart should have known of the water on the floor where Plaintiff fell. This is particularly true given the fact that all Walmart employee are required to constantly monitor the floors and be looking for any condition that could be dangerous to its customers.

5. ***Evidence that Walmart Violated its Policies and Procedures***

Under Florida law, a business must maintain its premises in a reasonably safe condition and warnits visitors of latent dangers on its property. *E.g., Hall v. Holland*, 47 So. 2d 889, 891 (Fla. 1950). A defendant's internal policies are relevant evidence of the standard of care. *Steinberg v.Lomenick*, 531 So. 2d 199, 200 (Fla. 3rd DCA 1988) (*citing Thropp v. Bache Halsey Stewart Shields, Inc.*, 650 F.2d 817, 820 (6th Cir. 1981)); *Cain v. Brown*, 569 So. 2d 771, 772 (Fla. 4th DCA 1990); *See also Kertz*, No. 2:12-cv-22-FtM-29SPC, 2013 U.S. Dist. LEXIS 51649, 2013 WL 1464180, at *6 (genuine issue of material fact precluded a finding that defendant exercised ordinary care through its inspection policy considering it failed to follow its policies)

Here, there is evidence for which a jury can infer that the employees of Walmart failed to abide by their own policies and procedures. First, Walmart concedes that, pursuant to its policies and procedures, all of its employee "have a responsibility to be actively looking for slip and fall hazards" and that "every employee is expected to be actively looking for any type of liquid on the ground" [DE 34 par. 14]. This is not a passive task, rather, employees must "vigilant in looking for substances on the ground." [DE 34 at par. 14]. Walmart trains its employees slip and falls are the number one source of customer injuries. [34-6 at 28:21- 29:7].

As stated above, 12 employees are seen on the CCTV video walking through the area where Plaintiff fell in the five minutes proceeding this incident. The employee who Walmart states was

charged with inspecting the area is observed not even looking at the floor. Moreover, George Salavics (the assistant manager at the time of the fall) testified that he (as the assistant manager familiar with Walmart's policies and procedures) would expect the Walmart employee who guarded the spill to see the water and correct the condition prior to the fall.

> Q.    I'm going to represent to you, and I just want you to accept this as a fact, if it turns out not to be, that's okay, but that the woman I've circled is a Walmart Employee. Okay?
> A.    Okay.
> Q.    If there was water in the area that is just where my client's foot is, or somewhere in that vicinity, would you have expected that Walmart employee to have seen it and done something about it.
>        MS. TANNER: Form.
> A.    Yes.
> Q.    (By. Mr. Hunt) Okay. And is that because associates should be vigilant in looking out for water on the ground or substances that can cause someone to fall?
>        MR. TANNER: Form.
> A.    Yes.

[DE 34-4 at 48;19-49;10].

It logically follows that if he would expect *that* employee to see the water if she was being vigilant, he would expect all the employees near the substance to see and correct the water on the floor. Yet, 12 Walmart associates pass by the area and do nothing. This evidence presents an issue of material fact as to whether Walmart's employees complied with its policies and procedures and acted reasonably under the circumstances.

Second, Walmart has specific policies and procedures that were implemented strictly for purposes of preventing slip and falls during times of inclement weather. Pursuant to Walmart's Standard Operating Procedures, there are certain precautions that every Walmart employee needs to take in times of inclement weather. Specifically, as Defendant stated in its Motion for Summary Judgment, when there is inclement weather, Walmart employees must "place additional wet area mats, place caution cones at entrances and exits, provide umbrella bags to customers, and employ

the use of a dry mop every fifteen minutes <u>or as needed to dry wet floors.</u>" *See Df. Motion for Summary Judgment at* ¶17. For all the reasons stated in the prior sections, there is sufficient evidence to create a jury question as to whether Walmart complied with this policy and procedure and mopped sufficiently to dry the floors.

**6.  *Evidence that this was a Recurring Condition that was Foreseeable to Walmart***

Pursuant to §768.0755(1)(b), constructive knowledge can be shown by circumstantial evidence showing that the "condition occurred with regularity and was therefore foreseeable." (Fla Stat. 2010).  In order to be entitled to summary judgment Walmart needs to prove that there is no issue of material fact regarding the regularity with which the condition occurred. Where conditions surrounding two incidents are similar enough to allow the jury to draw a reasonable inference concerning a defendant's actual or constructive knowledge of a dangerouscondition, the previous substantially similar incident is admissible. *Borden, Inc. v. Fla. E. Coast Ry.*, 772 F.2d 750, 755 (11th Cir. 1985); *see also Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 1988) (prior incidents are admissible if they were caused by "conditions substantially similar to the occurrence in question.").

In its Motion for Summary Judgment Walmart has narrowly defines "substantially similar" incidents as accidents which occurred in the Produce Department in water."  [DE 34 at par 21]. Walmart indicates that "[t]here were not substantially similar incidents for at least six months prior to Plaintiff's fall." This carefully crafted statement indicates that Walmart is aware of at least one "substantially similar" incident approximately 6 months prior. Moreover, the testimony of Walmart's employees indicates that rainwater would frequently be tracked into the Walmart causing a dangerous condition. Walmart Employee Jose Antonio Gonzalez testified that customers frequently slipped and fell after coming into Walmart on a rainy day because of water tracked in

from the outside.

> Q:    Do you recall any individuals slipping and falling after coming into Walmart from a rainy day?
> A:    During a rainy day it happens quite often.
> Q:    Falls happen quite often?
> A:    I think slip and fall during the rain can happen because it's wet outside. People, whose shoes are wet, and it's -- nothing we can stop really when the people are walking in from wet outside.

[DE 34-5 at 30:15-25]

Mr. Gonzalez estimated that he had actually seen or encountered a person that had slipped

and fallen on rainwater, *at least twenty times*:

> Q.    And how many times approximately have you encountered an individual who had slipped and fallen due to rain outside that was kind of brought inside?
>        MR. TANNER: Form.
> A.    I don't recall a number. It would be impossible for me to tell you the actual number.
> Q.    (By Ms. Stapleton) Are we talking like two times or like 20 times?
> A.    Twenty or more.
> Q.    Okay.

[DE 34-5 at 30:15-25]

Moreover, Walmart Assistance Manager, George Salavics, testified that the very purpose

of the policy and procedures on inclement weather is to prevent customers tracking water through

the store.

> Q.    All right. Have you seen instances where you will have more than one Walmart employee at one time mopping the -- the areas of the entrances due to rain?
> A.    Yes. I've seen where we've had multiple door hosts and all the maintenance in the building up at the front keeping the fronts dry.
> Q.    All right. And is the purpose for doing that so that customers are less likely to track water in through the store?
> A.    Yes.
> Q.    Okay. If a customer tracks water into the store, that can be hazardous to that particular customer but it could also be hazardous to other customers who might encounter the water from that person's shoes or items?
>        MS. TANNER: Form.
> A.    Correct.

[D.E. 34-4 at 30:6-22].

This fact indicates Walmart's awareness that water does get tracked through the store. Combined with testimony of Mr. Gonzalez, there is sufficient evidence that Walmart was aware that water get tracked through the stores on rainy days and that this happens frequently.

**B.     Plaintiff Can Establish that the Floor is Unreasonably Dangerous when Wet**

In Florida, an inappropriate or unreasonably dangerous flooring surface (based on the manner and context of its use) can breach a Defendant's common law duty of care and be the basis for liability. *See Ventimiglia v. TGI Fridays, Inc.*, 980 So. 2d 1087, 1088-89 (Fla. 4th DCA 2007) (error to exclude evidence of hard surface floors in area where frequent spills occurred and grease was tracked from kitchen as evidence of negligence); *Ladenson v. Eder*, 195 So. 2d 211, 214 (Fla. 1967) (slippery terrazzo floor can be the basis for liability); *Maas Brothers, Inc. v. Bishop,* 204 So. 2d 16 (Fla. 2d DCA 1967) (slippery metal strip in floor could be the basis for liability); *Hadley v. Davjoy, Inc.*, 613 So. 2d 49, 51 (Fla. 4th DCA 1992) (reversing summary judgment where temporary dance floor with excessive slope on edges combined with use of high heels in dancing could have made floor unreasonably dangerous).

In this case, Defendant opted for a flooring surface that was unreasonably dangerous despite more slip resistant surfaces being available.  This was done in a business environment where water is known to be present and where Walmart cannot reasonably expect to keep the floors dry at all times. This is exemplified by Walmart's knowledge that slip and falls are the number one cause of injury in their stores, and the frequency of spills in their stores. [See DE:34-5 at 30:15-19]. Given these circumstances a reasonable jury could find that Walmart was not taking sufficient precautions to satisfy their legal duty.

While Florida Statute **§**768.0755 applies to this case,  it does not change or limit the

common law duty of care owed by the Defendant. Subsection (2) specifically provides:

> *This section does not affect any common-law duty of care owed by a person or entity in possession or control of a business premises.* (emphasis added).

Further, although §768.0755(2) could not be any clearer on its face in allowing a claim for a violation of a common-law duty of care, and thus resorting to legislative history is not necessary, such also makes clear the Florida Legislature's approval of this claim. The predecessor to §768.0755 was §768.0710. [DE 32-2]. It is evident that said former Section did **not** contain any specific language regarding the business owner retaining common-law duties of care. In the Florida Senate's Bill Analysis and Fiscal Impact Statement for CS/SB 1224 for the Judiciary Committee, after going through the evolution of the case law on the subject, the Analysis discussed under "Effect of Proposed Changes" on page 8 the subsection at issue as follows:

> The bill specifies that the newly created section does not affect any common-law duty of care owed by a person or entity in possession or control of a business premises. *In other words, although the burden of proof for slip-and-fall cases is clearly delineated in the bill, the business owner or operator retains any common-law duties of care, such as the duty to use reasonable care to protect invitees from unreasonably dangerous conditions on the premises.* (emphasis added).

In fact, as is the purpose of the Judiciary Committee, it was this committee substitute that made this specification, as indicated in the Analysis on page 9 as follows:

**CS by Judiciary on March 18, 2010:**

> The committee substitute specifies that the newly created section does not affect any common-law duty of care owed by a person or entity in possession or control of a business premises.

Under Florida law, a business must maintain its premises in a reasonably safe condition and warnits visitors of latent dangers on its property. *E.g., Hall v. Holland*, 47 So. 2d 889, 891 (Fla. 1950). A defendant's internal policies are relevant evidence of the standard of care. *Steinberg v. Lomenick*, 531 So. 2d 199, 200 (Fla. 3rd DCA 1988) (*citing Thropp v. Bache Halsey*

*Stewart Shields, Inc.*, 650 F.2d 817, 820 (6th Cir. 1981)); *Cain v. Brown*, 569 So. 2d 771, 772 (Fla. 4th DCA 1990); *See also Kertz*, No. 2:12-cv-22-FtM-29SPC, 2013 U.S. Dist. LEXIS 51649, 2013 WL 1464180, at *6 (genuine issue of material fact precluded a finding that defendant exercised ordinary care through its inspection policy considering it failed to follow its inspection policy).

In the instant case, Defendant breached common law duties owed to Plaintiff, a business invitee, including the duties to: "(1) to take ordinary and reasonable care to keep its premises reasonably safe for invitees; and (2) to warn of perils that were known or should have been known to the owner and of which the invitee could not discover." *See Kertz*, No. 2:12-cv- 22-FtM-29SPC, 2013 U.S. Dist. LEXIS 51649, 2013 WL 1464180, at 5 (citing *Delgado v. Laundromax, Inc.*, 65 So. 3d 1087 (Fla. 3rd DCA 2011).

The evidence in this case establishes that Defendant breached their common law duty of care. The flooring that is the subject of this litigation is Vinyl Composite Tile. [DE 40-1] Plaintiff's expert, David Gill, has tested VCT and found it to be unreasonably dangerous when wet. [DE 40-1 at par. 14]. No evidence has been presented to refute that VCT is unreasonably dangerous when wet. The only argument presented by Defendant on this matter is Defendant's Daubert Motion to Preclude the Testimony and Opinions of Plaintiff's Expert, David Gill. This argument was extensively briefed in Plaintiff's Response to Defendant's Motion to Preclude the Testimony and Opinions of Plaintiff's Expert David Gill. [DE 40] Mr. Gill's opinions are based on a review of all available evidence (including surveillance video and deposition testimony), a physical inspection of the flooring, his education and training regarding VCT flooring, his prior test results of VCT flooring, industry standards regarding slip resistance, and published studies and articles regarding the known and accepted properties of VCT and this surfaces inability to be

slip resistant when wet. [DE 40]

Based on the evidence, Defendant negligently maintained a dangerous and defective condition on the premises where it knew or should have known invitees' traverse. Reasonable alternative flooring surfaces and treatments, to make Defendant's floor more slip resistant exist. Accordingly, Defendant failed to: provide a safe walking surface; rectify a hazardous walking condition; exercise ordinary care to maintain the premises in a safecondition and, warn of a hazardous walking condition.

In light of these facts, Defendant should have taken ordinary and reasonable steps to keep its premises reasonably safe for invitees. Further, Defendant should have warned customers, including Plaintiff, of the dangerous conditions present on its premises. Accordingly, the flooring was unreasonably dangerous when wet, thereby breaching Defendant common law duties owed to Plaintiff.

**C.    Plaintiff Can Establish Medical Causation**

Walmart has asserted "that Plaintiff has come forward with insufficient evidence to establish the necessary causal link between the incident, his injuries, medical care, or expenses." [DE 34 at page 24]. Walmart further asserts that "Plaintiff has failed to identify any expert who can submit admissible evidence as to the cause of Plaintiffs injuries." [DE 34 at page 24].

The only argument that Defendant provided to support this proposition is that Defendant argues "Dr. Norton's causation 'opinions' are inadmissible as they were not based upon the necessary facts and data sufficient to support such opinions." [DE 34 at page 24]. This argument was extensively briefed in Plaintiff's Amended Response in Opposition to Defendant's Motion to Strike/Exclude Treating Physician, Robert Norton's Expert Testimony. [DE 43]. A review of the medical records confirms that Dr. Norton's opinions were created at the time of his treatment of

the Plaintiff and for the purposes of rendering treatment to the Plaintiff. This fact is confirmed and clarified by the declaration of Dr. Norton. Moreover, Dr. Norton has testified and declared that that his opinions remain unchanged as a result of viewing the video of the fall. Any perceived discrepancies in the manner in which the Plaintiff fell are immaterial to Dr. Norton's causation opinions. While Walmart disputes the strength of the factual basis for Dr. Norton's opinions. Any criticism by Walmart ultimately go to the weight and not the admissibility of Dr. Norton's testimony, and Walmart is free to try and cross examine Dr. Norton and Mr. Ballesteros on these perceived weaknesses. As the Eleventh Circuit has noted: "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence. Quite the contrary, 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011).

## CONCLUSION

For the reasons set forth above, it would be improper for the Court to grant the Defendant's Motion for Final Summary Judgment. Plaintiff respectfully requests that the Court issue an Order denying the Defendant's requested relief.

24

DATED this 7TH day of April, 2021.

> GOLDMAN & DASZKAL, P.A.
> Attorneys for Plaintiff
> 1630 West Hillsboro Boulevard
> Deerfield Beach, FL 33442
> Telephone:   (954) 428-9333
> Facsimile:     (954) 428-9338
> Email: Service.Hunt@gdinjurylaw.com

> BY:   _____
> _____
>  ALEXANDER R. HUNT, ESQUIRE
> FBN: 50206
> service.hunt@gdinjurylaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of April 2021, I electronically filed the foregoing document with the Clerk of Court using CM/ECF system which will send a copy of the foregoing to the following:

**HENDERSON, FRANKLIN, STARNES & HOLT, P.A.**
Amanda J. Sharkey Ross
Florida Bar No.: 598666
Madison A. Tanner
Florida Bar No.: 1011247
P.O. Box 280
Fort Myers Florida, 33902-0280
T: (239)344-1263/F: (239)344-1539
Amanda.Ross@henlaw.com
Madison.Tanner@henlaw.com
Tracey.Salerno@henlaw.com
Susan.Peters@henlaw.com

BY:   _____
**ALEXANDER R. HUNT, ESQ.**
Florida Bar No.: 50206