# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

MICHAEL BALLESTEROS,

    Plaintiff,

v.                                         Case No: 2:19-cv-881-SPC-NPM

WAL-MART STORES EAST,
LP,

    Defendant.
_____/

## OPINION AND ORDER[1]

Before the Court is Defendant Wal-Mart Stores East, LP's Motion for Summary Judgment (Doc. 34). Plaintiff Michael Ballesteros responded in opposition (Doc. 44) and Walmart replied (Doc. 47). Also here is the briefing on Walmart's Motion to exclude testimony. (Docs. 32; 43).

## BACKGROUND

This is a slip-and-fall case. On a rainy day, Ballesteros walked into Walmart. In the entryway, a Walmart employee mopped the floor.[2] This was standard procedure because (as every Floridian knows) it's all too common to

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[2] Reference to "employees" below are Walmart employees, unless in the context of other cases.

track water inside during a rainstorm. Ballesteros walked out of the entryway towards the produce area then slipped and fell.

He fell about fifty feet away from the mopping employee. Ballesteros didn't see anything on the ground before falling. But after, he saw an area of clear water spots extending about fifteen feet around him. There were footprints in the water.[3] ([Doc. 34-1 at 48](#), [57-59](#), [97-98](#)). Some footprints were behind Ballesteros (in the area he did not yet walk). He did not know where the water came from. Nor how long it was there. After falling, Ballesteros didn't stick around. He popped back up and kept walking. Within seconds of the fall, however, an employee inspected the area, stood guard, and called a coworker over to mop something. Nobody took pictures. While a surveillance camera caught the incident, it does not show any water.

There was at least one wet floor sign in the area even though Ballesteros did not see it. Likewise, he didn't notice any mats near the front door, yet those perhaps were just out of the camera frame. While Ballesteros testified to falling backward on his arm, hands, and backside, video showed him falling

---

[3] Later in his deposition, Ballesteros testified he didn't see footprints, just droplets of water. ([Doc. 34-1 at 94-95](#), [98-100](#)). Yet a declaration clarified there was a miscommunication and Ballesteros saw footprints. ([Doc. 44-3](#)). This is not an unexplained contradiction to clear testimony. Ballesteros' waffled between calling the spots footprints and droplets. Put simply, there is not enough to find this a sham affidavit. *Cf. [Latimer v. Roaring Toyz, Inc.](#)*, 601 F.3d 1224, 1237 (11th Cir. 2010). And as much as the parties dispute whether the water spots were footprints, the Court must accept Ballesteros' version of events. *[Feliciano v. City of Miami Beach](#)*, 707 F.3d 1244, 1247 (11th Cir. 2013).

forward on his hands and knees. In any event, Ballesteros suffered injuries including a herniated disk. So he brought a negligence claim, asserting breaches of several duties.

## **LEGAL STANDARD**

Sitting in diversity over this negligence claim, the Court applies Florida substantive and federal procedural law. *Global Quest, LLC v. Horizon Yachts Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2017). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden to show the lack of genuinely disputed material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If carried, the burden shifts onto the nonmoving party to point out a genuine dispute. *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2018). At this stage, courts view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

**DISCUSSION**

Slip and falls are a form of negligence, so plaintiffs must show duty, breach, causation, and damages. *Oliver v. Winn-Dixie Stores, Inc.*, 291 So. 3d 126, 128 (Fla. Dist. Ct. App. 2020). Businesses owe invitees two duties: (1) to keep the premises reasonably safe; and (2) to warn of dangers the business knew (or should have known) about that the invitee couldn't discover. *Norman v. DCI Biologicals Dunedin, LLC*, 301 So. 3d 425, 428 (Fla. Dist. Ct. App. 2020). In these premises liability cases, a business must have "actual or constructive knowledge of the dangerous condition." Fla. Stat. § 768.0755(1). And the burden is on plaintiff to make that notice showing. *Encarnacion v. Lifemark Hosps. of Fla.*, 211 So. 3d 275, 278 (Fla. Dist. Ct. App. 2017).

Walmart challenges Ballesteros' evidence on the notice and causation elements. The Court takes each in turn.

**A. Notice**

To start, the parties do not dispute Walmart did not have actual notice. "Actual knowledge of a dangerous condition exists when a business owner's employees or agents know of or create the dangerous condition." *Palavicini v. Wal-Mart Stores E., LP*, 787 F. App'x 1007, 1010 (11th Cir. 2019). In passing, Ballesteros mentions Walmart had actual notice. But he neither makes argument nor cites evidence to support that theory. The Court will not do so

on his behalf. Fed. R. Civ. P. 56(e). With no actual knowledge, the Court turns to constructive notice.

Under certain conditions, a plaintiff can support an inference for a business' constructive knowledge of a dangerous condition. *Berbridge v. Sam's E., Inc.*, 728 F. App'x 929, 930 (11th Cir. 2018). Plaintiffs make that showing in one of two ways:

> (a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or
>
> (b) The condition occurred with regularity and was therefore foreseeable.

Fla. Stat. § 768.0755(1)(a)-(b). The evidence offered in support may be direct or circumstantial. *Id.*

Importantly, "the mere presence of water on the floor is not enough to establish constructive notice." *Delgado v. Laundromax, Inc.*, 65 So. 3d 1087, 1090 (Fla. Dist. Ct. App. 2011); *see also Pussinen v. Target Corp.*, 731 F. App'x 936, 937 (11th Cir. 2018). So "the record must contain additional facts to create a permissible inference regarding the amount of time the water had been on the floor." *Palavicini*, 787 F. App'x at 1013. Evidence for "signs of age" like "dirt, scuffing, or tracks in a substance" can do the trick. *Berbridge*, 728 F. App'x at 930 (citations omitted).

5

Here, there is enough evidence to support a reasonable inference that Walmart had constructive notice of the water on the ground.

Ballesteros slipped on something. After falling, he saw water on the ground in a roughly fifteen-foot area around him. While clear, the liquid appeared to be spread by feet. Many footprints were in an area Ballesteros didn't walk, so those marks were from employees or other customers. In Florida, footprints are a sign of age that can support a reasonable inference liquid was on the ground long enough to be tracked around. *E.g.*, *Norman*, 301 So. 3d at 430-31; *Williams v. Ryta Food Corp.*, 301 So. 3d 339 (Fla. Dist. Ct. App. 2020). As Judge Byron explained, "the condition of a substance left on a floor deteriorates over time . . . liquids become soiled, smeared, and show track marks and footprints." *Garcia v. Wal-Mart Stores E., L.P.*, No. 6:14-cv-255-Orl-40TBS, 2015 WL 898582, at *3 (M.D. Fla. Mar. 3, 2015). The fact water was spread by foot over a large area is circumstantial evidence supporting an inference the condition existed for long enough that Walmart (exercising care) should have known about it. *See* Fla. Stat. § 768.0755(1)(a); *Barillas v. Wal-Mart Stores, Inc.*, No. 14-CIV-62821-BLOOM/VALLE, 2015 WL 11143345, at *2 (S.D. Fla. Dec. 1, 2015) (collecting cases).

Walmart contends two employees inspected the area in the minutes just before the fall, establishing there was no water on the ground at that time. Not so. While employees walked through the area, the video does not show them

inspecting anything or even looking at the ground. They simply walked past. And Walmart did not offer statements from those employees revealing whether they saw anything. Cf. *Hernandez v. Sam's E., Inc.*, No. 20-CV-61648-RAR, 2021 WL 1647887, at *3, 5 & n.8 (S.D. Fla. Apr. 26, 2021) (holding no notice where employee testified he inspected area and saw nothing); *Walker v. Winn-Dixie Stores, Inc.*, 160 So. 3d 909, 912-13 (Fla. Dist. Ct. App. 2014) (holding no notice because employees inspected area three minutes before fall and it only started raining one minute before incident). In the same way, the testimony of an off-duty employee, who walked through the area, changes nothing. He simply testified to not seeing the fall. Nowhere in his deposition did the employee explain inspecting the ground. The video bears this out—showing him walking head up past the area before the fall, then returning with a cart without looking at the employee standing guard over the spot Ballesteros slipped. Because Walmart trains employees to look for spills, it asks the Court to assume inspections occurred and no water existed. Yet the Court cannot do so on this record.

What's more, employees were mopping near the front door for over a half hour before the fall. This was standard procedure when it's raining—as it was that day—because people tend to track water inside. Their efforts were not limited to the entryway. Employees mopped the tile going towards the spot Ballesteros fell. Yet nobody mopped the area where he slipped (a short

7

distance from the entryway) for over an hour before the incident. In the half hour before the fall, over 100 people walked through the area with shoes, umbrellas, wheelchairs, and carts: all things that could easily bring rainwater inside. Still, the video does not show employees inspecting the area during that time despite passing through and mopping nearby. *See [Borroto v. Wal-Mart Stores E., LP](), No. 2:19-cv-356-FtM-38NPM, 2020 WL 6591193, at \*4-5 (M.D. Fla. Nov. 10, 2020)* (noting failure to inspect can support constructive notice when "coupled with other circumstantial evidence" (citation omitted)). Right after the fall, an employee inspected the area, stood guard, and called a coworker over from the entryway to mop the spot. Taken together, the above supports an inference of constructive notice.

Finally, one employee testified customers slip inside the store "quite often" on rainy days. ([Doc. 34-5 at 31-32]()). In ten years at Walmart, he estimated encountering at least twenty slip and falls from rainwater brought into the store. ([Doc. 34-5 at 33-34]()). While the employee did not clarify the exact area he referred to, the Court must view the facts in the light most favorable to Ballesteros. There is at least a genuine disputed whether water regularly came into Walmart when it rained. In fact, Walmart had a policy to protect against that condition. ([Doc. 34-7]()). And it would not be unreasonable to infer water could be tracked a short distance beyond the entryway to the place Ballesteros fell. The video showing several employees mopping outside

the entry supports this. Because a reasonable jury could conclude the condition occurred with regularity and was foreseeable, summary judgment is misplaced. *See* Fla. Stat. § 768.0755(1)(b); *Doudeau v. Target Corp.*, 572 F. App'x 970, 972 & n.1 (11th Cir. 2014).

Several cases are helpful. For instance, *Garcia v. Target Corp.* held summary judgment improper given testimony of footprints through water on the ground in an area "it appeared crowds of people had walked in after it was raining." No. 13-60308-CIV, 2014 WL 505151, at *3 (S.D. Fla. Feb. 7, 2014). The situation here is indistinguishable. Likewise, an Eleventh Circuit case is on point. *Doudeau*, 572 F. App'x 970. There, plaintiff slipped near a store entrance (a known slip-and-fall area). While there were no marks in the puddle, it rained that day, and an employee said the water must have been tracked in from outside. Those facts created a genuine dispute on constructive notice. The result is the same here.

Ballesteros presented enough evidence to support a reasonable inference that Walmart had constructive notice of the condition. To grant summary judgment, the Court would need to disbelieve Ballesteros or at least view the evidence most favorably to Walmart. Of course, either would be improper. *E.g.*, *Hickman v. Spirit of Athens, Ala., Inc.*, 985 F.3d 1284, 1287 (11th Cir. 2021). Having concluded Walmart had constructive notice, the Court turns to the second challenge.

## B. Causation

It's axiomatic "there must be a causal connection between the negligence complained of and the injury suffered." *Fla. E. Coast Ry. v. Pickard*, 573 So. 2d 850, 854 (Fla. Dist. Ct. App. 1990). "In the negligence context under Florida law, lay testimony is legally insufficient to support a finding of causation where the medical condition involved is not readily observable." *Jones v. Discount Auto Parts, LLC*, No. 6:16-cv-138-Orl-37KRS, 2017 WL 1396477, at *9 (M.D. Fla. Apr. 19, 2017) (citation omitted).[4] Because "back pain and soft tissue injuries are not readily observable," expert testimony is necessary to show medical causation. *Id.* (citation omitted).

Ballesteros offered an expert on medical causation—Dr. Robert Norton. Norton treated Ballesteros for a herniated disk. And Norton opined the fall caused the injury. Walmart only challenges Norton's testimony based on its Motion to exclude. So if the testimony is admissible, summary judgment on medical causation fails.

A plaintiff's "treating physician may testify as a lay witness regarding [her] observations and decisions during treatment." *E.g.*, *Wilson v. Taser Int'l, Inc.*, 303 F. App'x 708, 712 (11th Cir. 2008). But "once the treating physician

---

[4] *See, e.g.*, *Easterwood v. Carnival Corp.*, No. 19-cv-22932-BLOOM/Louis, 2020 WL 7042643, at *17 (S.D. Fla. Dec. 1, 2020); *Small v. Amgen, Inc.*, No. 2:12-476-PAM-MRM, 2017 WL 5444003, at *2 (M.D. Fla. Mar. 22, 2017).

10

expresses an *opinion* unrelated to treatment which is 'based on scientific, technical, or other specialized knowledge,' that witness is offering expert testimony." *Id.* (quoting *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005)). "Whether a treating physician is properly considered a lay witness or an expert witness depends on the *substance* of the treating physician's anticipated testimony rather than any designation by the party offering the witness." *Robles v. Costco Wholesale Corp.*, No. 8:18-cv-1453-EAK-JSS, 2019 WL 11505075, at *3 (M.D. Fla. July 26, 2019).

The parties agree Norton will testify as an expert on causation, prognosis, and future treatment.[5] But they disagree whether he is a retained or nonretained expert. This is important because retained experts must produce a full report. Fed. R. Civ. P. 26(a)(2)(B). Nonretained experts must simply provide the subject matter, facts, and opinions of their testimony. Fed. R. Civ. P. 26(a)(2)(C). A treating physician is a common type of nonretained expert. Fed. R. Civ. P. 26(a)(2)(C) advisory committee' note to 2010 amendment ("A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony . . . . Frequent examples include physicians."); *Rangel v. Anderson*, 202 F.

---

[5] The Court recognizes that some of Norton's testimony might be permissible as a lay witness. *See Principi v. Survivair, Inc.*, 231 F.R.D. 685, 692 (M.D. Fla. 2005). Since neither party addresses this though, the Court will not do so.

Supp. 3d 1361, 1364 (S.D. Ga. 2016). Ballesteros disclosed Norton as a nonretained expert and provided a Rule 26(a)(2)(C) disclosure. (Doc. 32-1 at 5-6) (disclosing the subject matter of expert testimony along with a summary of expected facts and opinions). If Norton is a nonretained expert, therefore, Ballesteros complied with Rule 26 and the Motion to strike fails. Walmart does not challenge that conclusion much.

Usually, "if a physician's opinion regarding causation or any other matter was formed and based on observations made during the course of treatment, then no Rule 26(a)(2)(B) report is required." *Discount Auto*, 2017 WL 1396477, at \*9 (cleaned up). "Opinions regarding causation, the need for continued treatment, and the reasonable cost thereof may be formed during the course of treatment and do not automatically convert a treating doctor into one retained or specially employed to provide expert testimony within the meaning of Rule 26(a)(2)(B)." *Guffey v. Dillards, Inc.*, No. 3:14-cv-1469-J-32JBT, 2015 WL 12844949, at \*3 (M.D. Fla. Dec. 29, 2015). In fact, "Treating physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the prognosis, and the extent of disability, if any, caused by the condition or injury." *Sweat v. United States*, No. 8:14-cv-888-T-17JSS, 2015 WL 8270434, at \*2 (M.D. Fla. Dec. 8, 2015) (citation omitted). "But, if a health care professional is asked to give any additional opinions, beyond those procured directly from treatment, then for those additional

12

opinions to be admissible, Plaintiff must first provide the full written disclosures required by Rule 26(a)(2)(B)." *Id.* (citation omitted).

Norton did not rely on matters outside his treatment of Ballesteros in forming the challenged opinions. Indeed, Norton formed those opinions while treating Ballesteros (well before this action) and documented them over several reports. (Docs. 34-9 at 1-2; 43-1 at 3; 43-2 at 3). If Walmart had any doubt, Norton dispelled it during his deposition and a later declaration. So no expert report was required, and the Rule 26(a)(2)(C) disclosure was enough. *E.g.*, *Discount Auto*, 2017 WL 1396477, at *9; *Levine v. Wyeth, Inc.*, No. 8:09-cv-854-T-33AEP, 2010 WL 2612579, at *1-2 (M.D. Fla. June 25, 2010). As a result, Walmart's request to strike Norton's testimony under Rule 37(c)(1) is denied.

But Walmart's challenge doesn't end there. A nonretained expert is an expert nonetheless, so *Daubert*[6] still applies. *See Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1317-18 (11th Cir. 2011).[7] The Court holds Norton meets the standard for admissibility.

A "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" when,

---

[6] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[7] Again, neither side argues Norton should be treated as a lay witness. So the Court need not decide to what extent *Daubert* does not apply. *See Taser*, 303 F. App'x at 712.

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Judges act as "gatekeepers" for expert testimony—engaging in a "rigorous" test to determine whether (1) the expert is qualified; (2) the methodology is reliable; and (3) the methodology is correctly applied to assist the factfinder. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005) (citation omitted). These are commonly called the qualification, reliability, and helpfulness prongs. And while there is sometimes overlap between the three, each is separate with its own analysis. *Moore v. Intuitive Surgical, Inc.*, No. 19-10869, 2021 WL 1572580, at *8 (11th Cir. Apr. 22, 2021) (selected for publication). "The party offering the expert has the burden of satisfying each of these three elements by a preponderance of the evidence." *Rink*, 400 F.3d at 1292.

First, Walmart doesn't contest Norton's qualifications. And Ballesteros carried his burden to show Norton is qualified. *See United States v. Frazier*, 387 F.3d 1244, 1260-61 (11th Cir. 2004).

Second, Walmart says Norton's testimony is unreliable. "An expert opinion is *reliable* if it was arrived at through, among other things, a

14

scientifically valid methodology." *Moore*, 2021 WL 1572580, at *10. To determine reliability, courts ask a few nonexhaustive questions: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

The parties mostly focus on Norton's causation opinion. To support his conclusion, Norton examined Ballesteros, considered his medical history, reviewed x-rays and MRIs, and evaluated clinical symptoms. This type of methodology has been found reliable in the past. *Chau v. NCL (Bah.) Ltd.*, No. 16-21115-CIV-WILLIAMS/SIMONTON, 2017 WL 3623562, at *10-11 (S.D. Fla. May 3, 2017) ("Examining patients, taking a medical history, reviewing x-rays and concluding that Ms. Chau's injury was caused by her then-recent fall is consistent with techniques that have been generally accepted in the proper scientific community.").[8] To the extent that Walmart challenges the methodology on a differential diagnosis basis, the Court is unconvinced. Walmart offers no evidence of a different incident causing the injuries Norton

---

[8] *See also Ward v. Carnival Corp.*, No. 17-24628-CV-SCOLA/TORRES, 2019 WL 1228063, at *11-12 (S.D. Fla. Mar. 14, 2019); *Buckler v. Star Fleet Trucking, Inc.*, No. 1:17-CV-00081-ELR, 2020 WL 4722066, at *4 (N.D. Ga. Jan. 31, 2020).

15

treated. Nor is there any reason to doubt Norton's treatment was inadequate to rule out other causes. *See Discount Auto*, 2017 WL 1396477, at *9 n.12.

Walmart also contends Norton's opinions are unreliable because they're based on a false story rather than sufficient facts and data. As Ballesteros counters, however, each of Walmart's arguments fail. Medical records disclosed Norton's opinions, even if the causation opinions were left out of his final evaluation report. What's more, while the records do not reflect the full results of Ballesteros' physical examination, that does not somehow render the physical examination unreliable. Norton conducted an exam. Those findings were not recorded in a report because of a transcription error. But Walmart doesn't offer any challenge as to the reliability of the exam. Finally, Walmart says the opinions are unreliable because they followed Ballesteros' version of events, which was inaccurate. Yet Norton addressed this discrepancy in his deposition and declaration, stating the different fall did not change his conclusion.

At last, the parties do not make much argument on helpfulness. But it's clear Norton's testimony is just that. Expert testimony can be helpful or fit "if it concerns matters that are beyond the understanding of the average lay person." *Frazier*, 387 F.3d at 1262. "The touchstone of this inquiry is the concept of relevance." *Prosper v. Martin*, 989 F.3d 1242, 1249 (11th Cir. 2021). "Expert testimony which does not relate to any issue in the case is not relevant

and, ergo, non-helpful." *Daubert,* 509 U.S. at 591 (citation omitted). Norton's opinions, especially on causation, are relevant to central issues in the case (i.e., whether the slip and fall caused Ballesteros' injuries). And a doctor's opinion on whether the fall could cause a herniated disk is a matter well outside the understanding of an average person. Ballesteros' prognosis and future treatment opinions are too. So Norton's opinions would help the jury.

At bottom, Walmart disagrees with Norton's conclusions. But probing that disagreement is left for cross examination—not a *Daubert* motion. *Moore,* 2021 WL 1572580, at *8 (noting "courts must remain chary not to improperly use the admissibility criteria to supplant a plaintiff's right to a jury trial: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" (quoting *Daubert,* 509 U.S. at 596)). Because Norton can testify on medical causation, Ballesteros presented enough evidence to survive summary judgment on the issue.

**C. Conclusion**

It is unclear whether Ballesteros intends to raise a negligent mode of operation theory. If he tries to do so, it will fail. *Sanchez v. ERMC of Am., LLC*, No. 2:16-cv-851-FtM-99CM, 2017 WL 417129, at *3-4 (M.D. Fla. Jan. 31, 2017) (collecting cases). Relatedly, the Court rejects Walmart's unsupported argument that placing a single warning sign is dispositive on the question of

its duty to warn. *Randall v. Target Corp.*, No. 13-61196-CIV, 2014 WL 222340, at *3 & n.2 (S.D. Fla. Jan. 21, 2014) (collecting cases).

In short, the Court denies Walmart's Motions for summary judgment and to exclude Norton's testimony. While there is another *Daubert* motion pending, it's resolution is unnecessary for summary judgment. So the Court will rule on that motion closer to trial.

Accordingly, it is now

**ORDERED:**

(1) Defendant's Motion to Strike/Exclude Treating Physician, Robert Norton's, Expert Testimony (Doc. 32) is **DENIED**.

(2) Defendant's Motion for Final Summary Judgment (Doc. 34) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on May 3, 2021.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record